IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


INT'L PAINTERS AND ALLIED          *
TRADES INDUSTRY PENSION
FUND, ET AL.                       *

    v.                             *     CIVIL NO. WDQ-11-172

HG PROFESSIONAL PAINTING           *
INC.

## REPORT AND RECOMMENDATION

This matter comes before the Court upon motion by

Plaintiffs, International Painters and Allied Trades Industry

Pension Fund ("Pension Fund" or "Fund"), Gary J. Meyers

("Meyers"), in his official capacity as fiduciary on behalf of

the Pension Fund, and the Painters and Allied Trades Labor

Management Cooperation Initiative ("LMCI") (collectively

"Plaintiffs"), for an entry of default judgment against

Defendant, HD Professional Painting, Inc.("HD Professional" or

"Defendant"), pursuant to Federal Rule of Civil Procedure

55(b)(2) for failure to appear, answer, plead, or otherwise

defend in this matter.  (ECF No. 6).  Plaintiffs move under

sections 515 and 502(g)(2) of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §§ 1145, 1132(g)(2)(A)-(D),

and section 301 of the Labor Management Relations Act ("LMRA"),

29 U.S.C. § 185(a), for unpaid contributions, liquidated

1

damages, interest, and attorneys' fees and costs incurred by the Pension Fund pursuant to the collective bargaining agreement between Defendant and Local Union 47 ("Union"). (ECF No. 6-1, 1-2). Plaintiffs also seek injunctive relief in the form of an audit of Defendant's books and records and submission of any outstanding monthly remittance reports. (ECF No. 6-1, 22-24). For the reasons stated below, the undersigned recommends that the Court GRANT Plaintiffs' motion for judgment by default, enter judgment in the amount of $9,663.73, and order Defendant to submit to and pay for an audit of its books and records.

## I. Background

The underlying matter is a delinquent employer contribution collection action by a multiemployer pension trust fund established under 29 U.S.C. § 186(c)(5) against an individual employer. (ECF Nos. 1, ¶ 4; 6-2, ¶¶ 2-8). Trustees of the Fund are fiduciaries for the International Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan") (ECF No. 1, ¶ 4). The Pension Plan and Annuity Plan are "employee benefit pension plans" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. § 1002(A)(i), established by the Union and individual employers in private industry whose employees are members of or otherwise represented

by the Union for the purpose of providing retirement income to the employees. (ECF No. 6-2, ¶ 2). The Fund and Meyers are the authorized collection fiduciaries and agents for the Pension Plan, the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI") and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI") (hereinafter jointly and severally referenced as "ERISA Funds"), pursuant to an agreement by and among the Funds. (ECF Nos. 1, ¶ 7; 6-2, ¶ 4).

As a contributing employer to the Funds, Defendant is a party to a collective bargaining agreement ("Labor Contract") with one or more local labor unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (collectively the "Union") (ECF No. 1, ¶ 14), and is also bound by the terms of the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement") and the ERISA Fund's plan documents. (Id. at ¶ 15). By the terms of the Labor Contract, Trust Agreement, and plan documents of the ERISA Funds, Defendant is required to make full and timely payment on a monthly basis to the Funds; file monthly reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract; produce, upon request of the Funds, all books and records deemed

necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan; and to pay liquidated damages, interest audit costs, and all costs of litigation expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations. (ECF No. 1, ¶ 16).

The Labor Contract requires Defendant to submit monthly contributions to the Funds on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due to the Funds. (ECF No. 8-2, ¶ 7). Defendant must also submit regular remittance reports to the Pension Fund. (Id.). Failure to make required employer contributions, or submission of incorrect or late remittance reports or contributions, results in a delinquency to the Pension Fund. (Id.). Defendant's obligation to pay contributions and other damages is ongoing under the Labor Contract and trust documents. (ECF No. 6-1, 2).

On January 20, 2011, Plaintiffs initiated the underlying action to recover delinquent contributions, interest on the delinquent contributions, liquidated damages, attorneys' fees and costs, and an audit of Defendant's records. (ECF No. 1).

Defendant was served with the Complaint and Summons on February 11, 2011. (ECF No. 4). On March 11, 2011, Plaintiffs requested that the Clerk of the Court enter a default against Defendant for failure to defend against this action or otherwise move within 21 days as required by Rule 12(a) of the Federal Rules of Civil Procedure. (ECF No. 5). The Clerk of the Court entered an order of default against Defendants on March 22, 2011 pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 7). Also, on March 22, 2011, Plaintiffs filed the instant motion for entry of default judgment. (ECF No. 6). As of the time of the filing of Plaintiffs' motion, Defendant had reportedly failed to remit employer contributions, interest, and liquidated damages totaling $5,584.65. (ECF No. 6-2, ¶ 8).

## II. Analysis

### A. Jurisdiction

The Court has jurisdiction over the subject matter of this action under 29 U.S.C. §§ 1132, 1145 (ERISA); 29 U.S.C. §185(a) (LMRA); and/or 28 U.S.C. § 1331 (federal question jurisdiction). Although the claims asserted by Plaintiffs are made under federal statutes or federal common law, the supplemental jurisdiction of the Court under 28 U.S.C. § 1367(a) also extends to any claims that are found to lie under state law.

### B. Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly-served defendant who fails to file a timely responsive pleading. FED. R. CIV. P. 55(B)(2). In reviewing Plaintiffs' motion for judgment by default (ECF No. 6), the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001). However, it remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). In making this determination, the Court must consider three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); see also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987) (relying on these factors in determining whether a default judgment merited reconsideration).

If the Court determines that liability is established, it must then determine the appropriate amount of damages. <u>Ryan</u>, 253 F.3d at 780-81. Unlike allegations of fact, the Court does not accept allegations regarding damages as true, but rather must make an independent determination regarding such allegations. <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. FED. R. CIV. P. 55(b)(2). The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award. <u>See</u>, <u>e.g.</u>, <u>Stephenson v. El-Batrawi</u>, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."). In sum, the Court must (1) determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if so, (2) make an independent determination regarding the appropriate amount of damages.

The Clerk of Court having filed entry of default, the Court concludes that the procedural requirements for entry of default judgment have been met. (ECF No. 7). Moreover, because Defendant has failed to file any responsive pleadings or

otherwise show cause why default should not be granted, the
Court is "not in a position to judge whether Defendant has a
meritorious defense or whether any delay was the result of
culpable misconduct." Sambrick, 834 F.2d at 73. Further,
Defendant's failure to appear deprived Plaintiffs of any other
means of vindicating their claim and Plaintiffs will be
prejudiced if default is not granted. As discussed below,
Plaintiffs are entitled to default judgment.

**C.  Causes of Action**

Having found the technical requirements for entry of
default judgment satisfied in this matter, the Court must
determine whether Plaintiffs' well-pleaded allegations of fact
support a legitimate cause of action. See Ryan, 253 F.3d at 780
(finding that, upon default, the defendant admits the
plaintiff's well-pleaded allegations of fact); Directv, Inc. v.
Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004) (finding that,
where the procedural requirements for entry of default are met,
the court must determine whether the plaintiff's well-pleaded
allegations of fact support the claims and relief sought).
Having reviewed Plaintiffs' submissions and authority, the Court
finds that Plaintiffs' Complaint alleges sufficient facts to
support their claims under LMRA § 301, 29 U.S.C. § 185, and
ERISA §§ 515 and 502(g)(2), 29 U.S.C. §§ 1145, 1132(g).

Accordingly, entry of default judgment is proper as to Defendant's liability for failure to make contributions to the Funds and submit timely remittance reports under the terms of the Labor Contract, Trust Agreement, and plan documents.

Plaintiffs allege in the Complaint that, under the Labor Contract, Trust Agreement, and plan documents, the Company agreed: (1) "[t]o make full and timely payment on a monthly basis to the Funds, as required by the Labor Contract, Trust Agreement, and plan documents" (ECF No. 1, ¶ 16(a)) (citing ECF Nos. 1-3, Art. VI, § 2; 1-4, § 10.07); (2) "[t]o file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract" (ECF No. 1, ¶ 16(b))(citing ECF No. 1-3, Art. VI, §§ 3, 5); (3) "[t]o produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan" (ECF No. 1, ¶ 16(c))(citing ECF No. 1-3, Art. VI, § 6); and (4) "[t]o pay liquidated damages, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations

. . ." (ECF No. 1, ¶ 16(d))(citing ECF Nos. 1-3, Art. VI, §§ 4, 6; 1-4, §§ 10.07, 10.12).

In support of their claim that Defendant violated the terms of the Labor Contract, Trust Agreement, and plan documents, Plaintiffs filed the declaration of Thomas C. Montemore, Assistant to the Fund Administrator of the Fund since February 1, 2000. (ECF. No. 6-2, ¶ 1). In addition to having held various positions for the Fund since 1979, including Delinquency Controller, Mr. Montemore attests that he has personal knowledge of the contents of the Labor Contract, Trust Agreement, and Pension Plan at issue here. (Id. at ¶ 3). Mr. Montemore contends that, based on reports prepared by Defendant and submitted to the Fund, Defendant "owes $4,472.49 in contributions for the period of July, 2009 through March, 2010" and "owes interest through December 30, 2010 in the amount of $217.66 on the unpaid pension contributions . . ." and "owes liquidated damages in the amount of $894.50." (ECF No. 6-2, ¶ 8(a)-(c)). Mr. Montemore's declaration is consistent with the facts pleaded in the Complaint (ECF No. 1, ¶ 18). The violations detailed in Mr. Montemore's declaration and the Complaint support Plaintiffs' causes of action against Defendant under LMRA § 301, 29 U.S.C. § 185(a), as well as ERISA §§ 515 and 502(g)(2), 29 U.S.C. §§ 1145, 1132(g)(2).

LMRA § 301, the original jurisdictional and substantive basis for suits to collect delinquent benefit fund contributions in federal court, provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Plaintiffs, as an employee benefit trust fund and trustee, have standing to sue under 29 U.S.C. § 185(a). (ECF No. 6-1, 19) (citing Chicago Plastering Inst. Pen. Tr. v. W.A. Duguid, 761 F. Supp. 1345, 1347 n.2 (N.D. Ill. 1991) (finding that a benefit trust fund has standing to sue under 29 U.S.C. § 185(a) "as a beneficiary of the collective bargaining agreements authorizing it to collect contributions"); Schneider v. Moving & Storage Co. v. Robbins, 466 U.S. 370, 370-71 (1984) (recognizing that employee benefit trustees are a third-party beneficiaries of a collective bargaining agreement).

Plaintiffs may also sue under ERISA §§ 515 and 502(g)(2), which provide a separate federal remedy to collect delinquent employer pension plan contributions. 29 U.S.C. §§ 1145, 1132(g)(2); Laborers Health & Welfare Trust Fund for Northern California, et al. v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 539 (1988) (stating that 29 U.S.C. §§ 1132(g)(2),

1145 provides trustees of multiemployer pension plans with a federal remedy to collect certain delinquent employer pension plan contributions); see also Bugher, et al. v. Feightner, 722 F.2d 1356, 1359-59 (7th Cir. 1983) ("[A] review of the statutory scheme and legislative history of ERISA demonstrates that 29 U.S.C. § 1132(a)(3) was intended to supplement rather than supersede the rights under 29 U.S.C. § 185(a)"); Hudson County Carpenters Local Union No. 6 v. V.S.R. Construction Corp., 127 F. Supp. 2d 565, 568 (D.N.J. 2000)("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515 and a violation of LMRA § 301") (collecting authority).

ERISA § 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms of such plan or such agreement." 29 U.S.C. § 1145. The United States Court of Appeals for the Fourth Circuit has summarized the policy embodied in ERISA § 515 as follows:

> In a collection action based on section 515, a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents. In this respect, section 515 puts multiemployer

plans in a stronger position than they otherwise occupy
under common law contract principles . . . Section 515
strengthens the position of multiemployer plans by holding
employers and unions to the literal terms of their written
commitments.  Because an employer's obligation to a
multiemployer plan is determined by the plain meaning of
the language used in the collective bargaining agreement,
the actual intent of the contracting parties (i.e. the
employer and the local union) is immaterial when the
meaning of that language is clear . . . By allowing
multiemployer Plaintiffs to enforce the literal terms of an
employer's commitment, section 515 increases the
reliability of their income streams, reduces the cost and
delay associated with collection actions, and reduces or
eliminates the cost of monitoring the formation of
collective bargaining agreements.

Bakery and Confectionary Union and Industry International

Pension Fund v. Ralph's Grocery Company, 118 F.3d 1018, 1021

(4th Cir. 1997) (internal citations omitted).

If an employer fails to make contributions to an employee

benefit fund as required by the collective bargaining agreement

and ERISA § 515, the employer is subject to the provisions of

ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).  Section 502(g)(2),

the civil enforcement provision of ERISA, provides for recovery

of unpaid contributions, interest, liquidated damages,

reasonable attorneys' fees and costs, and such other relief as

the Court deems appropriate.  29 U.S.C. § 1132(g)(2).  The

monetary damages to which Plaintiff is entitled under section

502(g)(2) in the instant matter are discussed infra section

II.D.

**D. Damages and Injunctive Relief**

Having found that Plaintiffs' well-pleaded allegations of fact support liability under LMRA § 301, 29 U.S.C. § 185(a), and ERISA §§ 515 and 502(g)(2), 29 U.S.C. §§ 1145, 1132(g)(2), the Court must calculate damages. No evidentiary hearing is necessary to determine damages as there is an adequate evidentiary basis in the record for the award. See Adkins v. Teseo, 180 F.Supp. 2d 15, 17 (D.D.C. 2001) (finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

Pursuant to the terms of the Pension Plan Agreement (ECF No. 1-4) and the Trust Agreement (ECF No. 1-3), Defendant is obligated to pay: (1) the total amount of unpaid contributions still outstanding for the period of time from July 2009 through March 2010; (2) liquidated damages equal to 20 percent of unpaid contributions; (3) unpaid interest at the rate set forth in 26 U.S.C. § 6621; and (4) attorneys' fees, legal costs, and audit costs. (ECF No. 6-2, ¶ 8).

Defendant's statutory obligations under ERISA mirror its contractual obligations; ERISA § 502(g)(2) provides that Plaintiffs are entitled to a mandatory award of:

(A)  the unpaid contributions,
(B)  interest on the unpaid contributions,

14

> (C) an amount equal to the greater of:
>     (i) interest on the unpaid contributions; or
>     (ii) liquidated damages provided for under the plan in
>          an amount not in excess of 20 percent (or such
>          higher percentage as may be permitted under
>          Federal or State law) of the amount determined by
>          the Court under subparagraph (a),
> (D) reasonable attorney's fees and costs of the action, to
>     be paid by the defendant, and
> (E) such other relief as the Court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest awarded under ERISA §

502(g)(2) is calculated in accordance with 26 U.S.C. § 6621 from

the date the contributions became due. 29 U.S.C. § 1132

(g)(2)(B). In this case, interest awarded under LMRA § 301 is

also to be calculated in accordance with 26 U.S.C. § 6621, given

that the Labor Contract refers the issue of the contractual

interest rate to the Trustees of the Fund, who have adopted the

ERISA rate for contract interest. (ECF No. 6-2, ¶ 8(b)). The

calculation of liquidated damages under LMRA and ERISA is also

identical in this case, as the Trustees have adopted the ERISA

rate for contractual liquidated damages. (ECF No. 6-2, ¶ 8(c)).

As discussed above, Plaintiffs filed the declaration of Mr.

Thomas C. Montemore in support of their claim for unpaid

contributions, interest, and liquidated damages. (ECF No. 6-2).

Plaintiffs also submitted the Labor Contract (ECF No. 1-2),

Trust Agreement (ECF No. 1-3), and Pension Plan Agreement (ECF

No. 1-4), as well as a table reflecting their calculations of

damages due for Defendant's delinquency during the period of July 2009 through March 2010 (ECF No. 6-2, ¶ 8).

Plaintiffs' submissions indicate that Defendant owes a total amount of $5,584.65 for unpaid contributions ($4,472.49), interest ($217.66), and liquidated damages ($894.50). (Id.). These figures are consistent with the terms set forth in the Labor Contract (ECF No. 1-2), Trust Agreement (ECF No. 1-3), and Pension Plan Agreement (ECF No. 1-4). Accordingly, Plaintiffs have demonstrated through the Montemore affidavit and related exhibits their entitlement to $5,584.65 in contributions, interest, and liquidated damages.

As set forth above, ERISA § 502(g)(2)(D) mandates an award of "reasonable attorneys' fees and costs" where, as here, a trustee of an employee benefit plan prevails in an action to recover delinquent contributions pursuant to ERISA § 515. 29 U.S.C. § 1132(g)(2)(D). In support of their claim for fees and costs, Plaintiffs filed the declarations of Bridget C. Walsh, an associate at Jennings Sigmond P.C., and Brian G. Esders, an associate at Abato, Rubinstein & Abato, P.A., counsel for Plaintiffs throughout this action, indicating that Plaintiffs have incurred attorneys' fees in the amount of $3,568.50 and costs in the amount of $907.58. (ECF Nos. 6-4; 6-9; 6-10). The hours and rates supporting these charges are detailed with

16

necessary specificity in the filings of counsel. ((ECF Nos. 6-4; 6-9; 6-10). While there is no question that Defendant is liable for fees and costs in the instant matter, the Court must nevertheless evaluate the reasonableness of Plaintiffs' request for an award of $4,476.08 in fees and costs, particularly given that Defendant's liability for unpaid contributions, interest, and liquidated damages totals only $5,584.65.

It is well-established that where a fee-shifting statute does not set forth a particular rate, the appropriate method for determining the amount of a reasonable fee is the lodestar approach. See Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002) (stating that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence") (internal quotations omitted). Under this approach, the court reaches the lodestar figure by determining the reasonable number of hours expended on the litigation multiplied by a reasonable hourly fee. Blum v. Stevenson, 465 U.S. 886, 888 (1984). The product of this calculation represents a presumptively reasonable fee award, but may still require subsequent adjustment. Perdue v. Kenny A., 130 S.Ct. 1662, 1673 (Apr. 21, 2010). The Court finds that the hours expended by Plaintiffs' counsel on matters directly related to the litigation are reasonable, but modifies the hourly rates for

certain attorneys to reflect the guidelines for determining reasonable attorneys' fees in the Local Rules for the United States District Court for the District of Maryland. Local Rules, as amended Dec. 1, 2010, App. B.

Plaintiffs filed time and expense details reflecting work completed in conjunction with the instant litigation by attorneys and other staff at Jennings Sigmond, P.C. (ECF No. 6-9, 1-3). This submission indicates that Bridget C. Walsh, Associate, worked 13 hours at an hourly rate of $220 for a total fee of $2,860; Shanna M. Cramer, Associate, worked 0.6 hours at an hourly rate of $220 for a total fee of $132; and Carrie Fice, Legal Assistant, worked 0.2 hours at an hourly rate of $70 for a total fee of $14. (Id.). Thus, the sum of attorneys' fees reported by Jennings Sigmond, P.C. is $3,006. In addition, Jennings Sigmond, P.C. charged $557.58 for costs. (Id.). Accordingly, the total amount of fees and costs charged to Plaintiffs by Jennings Sigmond, P.C. is $3,563.58. (Id.).

Plaintiffs also filed the declaration of Brian G. Esders in support of attorneys' fees and costs charged to Plaintiffs by Abato, Rubinstein & Abato, P.A. (ECF No. 6-10). This submission indicates that Mr. Esders worked 2.5 hours at an hourly rate of $225 for a total of $562.50 in fees. (Id. at 2). In addition, Abato, Rubinstein & Abato billed $350 for costs

associated with the litigation.  (_Id._).  Thus, the total fees
and costs charged by Abato, Rubinstein & Abato is $912.50.
(_Id._).

The costs charged by Plaintiffs' counsel for such expenses
as filing fees, photocopies, postage charges, and computer
research, constitute reasonable out-of-pocket expenses incurred
by attorneys and ordinarily charged to their clients.  Thus, the
Court finds that an award of $907.58 in reasonable costs of
litigation is appropriate here.

The Local Rules for the United States District Court for
the District of Maryland, as amended December 10, 2010, set
forth rules and guidelines for determining attorneys' fees.
Local Rules, App. B.  Pursuant to the guidelines for determining
hourly rates, the appropriate hourly rate for lawyers admitted
to the bar for less than five years is $150-190; the appropriate
hourly rate for lawyers admitted to the bar for five to eight
years is $165-250; and the appropriate hourly rate for lawyers
admitted to the bar for nine to fourteen years is $225-300.  _Id._
at 90.  While these rates are intended to provide guidance to
judges when awarding fees, and are not binding upon the court,
they provide a useful barometer for the determining the lodestar
figure in this case.  _Id._ at n.6.

The declaration of Ms. Walsh indicates that she has practiced law since 2003, or for approximately seven to eight years. (ECF No. 6-4, ¶ 6). According to Ms. Walsh's declaration, her colleague Shanna M. Cramer, also an associate, has practiced law for approximately six to nine years. (Id. at ¶ 5). The declaration of Mr. Esders indicates that he was admitted to the Maryland Bar in 2005 and to the Bar of this Court in 2008, and has thus practiced law for approximately five to six years. (ECF No. 6-10, ¶ 2). The type of work conducted by Plaintiffs' counsel is routine within the area of alleged specialization. See (ECF No. 6-4), ¶ 9(a) (stating that "[w]e serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups").

For the aforementioned reasons, the undersigned recommends that fees for work completed by Mr. Esders be assessed at an hourly rate of $175.00 (rather than $225.00) for the purposes of the damages award in this case. Given that Ms. Walsh and Ms. Cramer have more experience, their work should be assessed at a slightly higher hourly rate of $200.00 (rather than $220.00). These revised hourly rates, but for the same number of hours claimed, result in a total award of $4,079.08 for fees and costs, representing $3,171.50 for attorneys' fees and $907.58 for costs.

The text of ERISA does not define what is considered a "reasonable" fee, nor does it impose a requirement that the fees awarded be proportionate to the amounts recovered. Neither the United States Supreme Court nor the Court of Appeals for the Fourth Circuit have addressed whether "reasonableness" incorporates a requirement that the fee award be proportional to the damages awarded to the prevailing party, but several Courts of Appeals have found that it does not. See United Automobile Workers Local 259 Social Security Dept. v. Metro Auto Center, 501 F.3d 283, 285 (3d Cir. 2007); Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995) (adopting a rule that "in ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages. However, the award of attorneys' fees must be reasonable as determined under the lodestar approach); Bd. of Trs. of the Hotel & Rest. Employees, Local 25 & Employers' Health & Welfare Fund v. Madison Hotel, 43 F.Supp. 2d 8, 14 (D.D.C. 1999) (adopting the view of the Court of Appeals for the Sixth Circuit that there is no proportionality requirement); see also Operating Eng'rs Pension Trusts v. B&E Backhoe, Inc., 911 F.2d 1347, 1355 (9th Cir. 1990) (refusing to adopt a "de

minimus" rule to bar litigation where only a few hours trust contribution is owing).

In determining that there is no proportionality requirement for fees awarded pursuant to ERISA § 502(g)(2), courts have emphasized the purpose of the fee-shifting provision in ERISA, 29 U.S.C. § 1132(g)(2)(D), and relied upon analogies to the disproportionate fees awarded in the civil rights context. See UAW Local 259, 501 F.3d at 292-95 (discussing the purpose of mandatory fee-shifting provision in ERISA § 502(g)(2) to encourage employers to make timely contributions, assist plans in their recovery of delinquent contributions, and discourage excessive litigation by defendants, and analogizing to the Supreme Court's refusal to adopt a "rule of proportionality with respect to 42 U.S.C. § 1988 because such a rule would make it difficult, if not impossible, for individuals with meritorious civil rights claims to but relatively small potential damages to obtain redress from the courts) (citing City of Riverside v. Rivera, 477 U.S. 561 (1986) (plurality opinion) (internal quotations omitted))). An award of $4,079.08 for fees and costs in the instant matter is consistent with the purpose of the mandatory fee-shifting provision in ERISA and is sufficient to ensure representation of employee benefit plans seeking to recoup delinquent employer contributions. For these reasons,

and given that the Fourth Circuit has neither endorsed or eschewed a proportionality rule with regard to ERISA § 502(g)(2), the lodestar figure represents a reasonable award here.

Based on the declarations of Mr. Montemore, Ms. Coleman, and Mr. Esders, as well as review of Plaintiffs' calculations and other submissions, the Court finds that Plaintiffs have established damages in the amount of:

- **$4,472.49** in unpaid contributions for work performed during the periods of July 2009 through March 2010;
- **$217.66** in interest;
- **$894.50** in liquidated damages; and
- **$4,079.08** in reasonable attorneys' fees and costs.

Therefore, pursuant to the terms of the relevant agreements and 29 U.S.C. § 1132(g)(2), the Court should award a monetary judgment in the total amount of **$9,663.73**. By the terms of the Labor Contract, enforceable under LMRA § 301, Plaintiffs are entitled to conduct an audit of Defendants' payroll, wage and cash disbursement records, general ledger, and other records, including but not limited to tax returns. (ECF No. 1-2, Art. VI, § 6). Given that the audit is made necessary by Defendant's delinquency, and that ERISA § 502(g)(2)(E) authorizes the Court to award "such other relief as the Court deems appropriate,"

Defendant shall bear reasonable costs of the audit.  In addition, Plaintiffs request, and are entitled to an award of post-judgment interest in accordance with 28 U.S.C. § 1961, <u>See I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Slyman Ind., Inc.</u>, 704 F. Supp. 301, 303 (D.D.C. 1989), <u>aff'd.</u> 901 F.2d 127, 130, 284 U.S. App. D.C. 21 (D.C. Cir. 1990) (finding that post-judgment interest on an award entered under 29 U.S.C. § 1132(g)(2) must be calculated in accordance with 28 U.S.C. § 1961), and an award of all reasonable attorneys' fees and costs they may incur in the collection and enforcement of this monetary judgment in accordance with 29 U.S.C. § 1132(g)(2)(D), <u>See Int'l Painter and Allied Trades Industry Pension Fund, et al., v. Brighton Painting Co.</u>, 267 F.R.D. 426, *11 (D.D.C. Apr. 19, 2010)(finding reasonable attorneys' fees and costs incurred in connection with collection actions against employers recoverable under ERISA § 1132(g)(2)); <u>Free v. Briody</u>, 793 F.2d 807, 808-09 (7th Cir. 1986) (same).

### III. Conclusion

Pursuant to the Order of Reference dated January 4, 2011 (ECF No. 9), the undersigned judge finds that an entry of default judgment is appropriate and therefore recommends that default judgment be entered in the amount of $9,663.73, reflecting:

1.  Unpaid contributions of $4,472.49;

2.  Interest of $217.66;

3.  Liquidated damages of $894.50; and

4.  Attorneys' fees and costs of $4,079.08.

In addition, the undersigned recommends that the Court enjoin Defendant to submit to and pay for an audit of its books and records by Plaintiffs.  Finally, the undersigned finds that Plaintiffs are entitled to post-judgment interest and reasonable attorneys' fees and costs incurred in the collection of this judgment, to be awarded by the court with jurisdiction over any subsequent collection proceedings.


Date: 8/23/11 _____                    /s/
                                   Susan K. Gauvey
                                   United States Magistrate Judge